```
 1  Craig Schloss (SBN 102488)
    cschloss@cozen.com
 2  Brett Greving (SBN 270883)
    bgreving@cozen.com
 3  COZEN O'CONNOR
    501 W. Broadway, Suite 1610
 4  San Diego, CA  92101
    Telephone: 619-234-1700
 5  Facsimile: 619-234-7831

 6  Attorneys for Defendant
    HOST HEALTHCARE, INC.
 7
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BLOUNT, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOST HEALTHCARE, INC., a Delaware corporation, and DOES 1 - 50, inclusive,<br><br>Defendant. | Case No.: **'21CV310  MMAWVG**<br><br>**DEFENDANT'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, AND 1453**<br><br>[*Filed Concurrently with Declaration of Craig Schloss; Civil Case Cover Sheet; Notice of Party with Financial Interest and Notice to Superior Court and Adverse Party of Removal*]<br><br>Complaint Filed:  November 16, 2020<br>FAC Filed:         January 4, 2021<br><br>Removed:          February 19, 2021 |

DEFENDANT'S NOTICE OF REMOVAL

LEGAL\51033611\2

**PLEASE TAKE NOTICE** that Defendant HOST HEALTHCARE, INC. ("Defendant"), hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446, and 1453. In support thereof, Defendant states as follows:

## I. PLEADINGS, PROCESS AND ORDERS

1. On November 16, 2020, this putative class action was commenced by Plaintiff Sarah Blount, as an individual and on behalf of all others similarly situated. The action is currently pending against Defendant in the Superior Court of California, County of San Diego, as Case No. 37-2020-00041775-CU-OE-CTL, entitled *SARAH BLOUNT, as an individual, and on behalf of all others similarly situated, Plaintiff, vs. HOST HEALTHCARE, INC., a Delaware corporation; and DOES 1 through 50, inclusive, Defendant.*

2. On January 4, 2021, prior to service on Defendant, Plaintiff filed a First Amended Complaint ("Complaint"). The Complaint asserted the following causes of action: (1) Failure to Pay All Regular and Minimum Wages; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Untimely Payment of Wages; (6) Wage Statement Violations; (7) Waiting Time Penalties; (8) Failure to Reimburse Business Expenses; (9) Violations of the Unfair Competition Law, and Claims for Civil Penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA").[1] *See* Exhibit A, Plaintiff's First Amended Complaint.

## II. THIS COURT HAS JURISDICTION

3. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") 29 U.S.C. § 1332(d), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred (100) members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and

---

[1] Plaintiff brings causes of action 10 through 18 under PAGA.

(c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. §§ 1446 and 1453. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

4. Pursuant to 28 U.S.C. § 1446(a), a notice of removal must: (1) be signed pursuant to Rule 11 of the Federal Rules of Civil Procedure; (2) contain a "short and plain statement of the grounds for removal"; and (3) be accompanied by a copy of all process, pleadings, and orders served on Defendant in the action.

## III. VENUE IS PROPER

5. With respect to this petition for removal, venue is proper in this Court pursuant to 28 U.S.C. sections 84(d), 1391 and 1446, this action was originally brought in the Superior Court of California for the County of San Diego (Case No. 37-2020-00041775-CU-OE-CTL).

## IV. DEFENDANT HAS SATISFIED THE REQUIREMENTS FOR REMOVAL

### A. This Removal Petition is Timely

6. Plaintiff served Defendant with the Summons and Complaint on via Notice and Acknowledgment of Receipt on January 22, 2021, see **Exhibit B.** Pursuant to 28 U.S.C. section 1446(b) and Federal Rule of Civil Procedure, Rule 6(a)(1)(C), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendant was formally served with the Summons and Complaint and within one (1) year after commencement of this action. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999) (30-day removal period runs from the service of the summons and complaint).

### B. The Procedural Requirements of Removal Are Met

7. On February 18, 2021, prior to the filing of Defendant's Notice of Removal, Defendant filed and served an Answer to Plaintiff's First Amended Complaint in the Superior Court. A true and correct copy of the Answer and the accompanying proof of service is attached as **Exhibit C**. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon Defendant are attached as **Exhibit D** to this Notice of Removal.

8. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a "Notice to State Court and Adverse Parties of Removal of Action" (to include a copy of this Notice of Removal and all Exhibits) will be promptly filed with the Clerk of the Superior Court in San Diego County, and served on all other parties to this action. A copy of the Notice to State Court and Adverse Parties of Removal of Action to be filed (without exhibits) is attached as **Exhibit E**.

## V. THIS COURT HAS JURISDICTION UNDER CAFA

9. In its decision in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547 (2014), the United States Supreme Court clarified the standards applicable to notices of removal in CAFA cases, confirming a liberal standard in favor of removing Defendant. Specifically the Supreme Court found that the similarity of language between the removal statute and Rule 8(a) can only mean that the same liberal pleading standards applied to complaints must also apply to notices of removal. *Id*. The Supreme Court also held in *Dart* that a removing defendant is **not required** to include evidence with its pleading in order to establish that the elements of federal subject matter jurisdiction are met. *Id.* at 552-553. Only if the Court or another party challenges jurisdiction should the Court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. "In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.

Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554.  In addition, there exists no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Id*.

10. Under CAFA, federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). *See* 28 U.S.C. §§ 1332(d)(2), d(5), and (d)(6). CAFA applies to certain "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B).

### B.  Plaintiff Asserts A Class Action Against Defendant

11. Plaintiff plainly brings this lawsuit as a class action.  The Complaint itself is titled "FIRST AMENDED CLASS AND REPRESENTATIVE ACTION COMPLAINT". Plaintiff states in the introductory paragraph that she "brings this class action and Representative Action against Defendants and that "[t]his a class action and representative action brought under the California Labor Code and Unfair Competition Law."  (**Exhibit A**, Complaint at Caption and ¶ 1.)  Accordingly, CAFA applies. *E.g.*, *Bodner v. Oreck Direct, LLC*, No. C 0604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

### C.  The Number of Putative Class Members Exceeds 100

12. Plaintiff seeks to represent a class of all individuals who worked for Defendant as a non-exempt or hourly employee in California at any time during the

-4-
DEFENDANT'S NOTICE OF REMOVAL

LEGAL\51033611\2

period of four years before the filing of the action and continuing to time of trial. ("Class") (**Exhibit A**, Complaint at ¶ 33a.)

13.   Although Plaintiff's Complaint does not allege a specific number of persons who meet her proposed class definition,[2] based upon inspection of Defendant's employment records the number of individuals employed by Defendant as non-exempt employees in California during the time period from November 16, 2016 to the present exceeds 100.  Thus, as defined in the Complaint, the putative class exceeds 100.

### D.   Defendant is not a Governmental Entity

14.   Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where "primary Defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

15.   Defendant is a corporation incorporated in Delaware and is not a state, state official or other government entity exempt from CAFA.

### E.   There Is Diversity Between At Least One Putative Class Member And Any One Defendant

16.   CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  Minimal diversity of citizenship exists here because at least one member of the putative class is a citizen of a state that is different than Defendant. If any unnamed class member is diverse from any defendant, minimal diversity is met (28 U.S.C. § 1332(d)(2); *Brink v. Raymond James & Assocs., Inc.*, 892 F.3d 1142, 1147 n.5 (11th Cir. 2018); *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017)). Named and unnamed class members are included to determine whether minimal diversity exists and, the citizenship of all class members

---

[2] Plaintiff alleges that the putative class is estimated to be greater than fifty (50) individuals and alleges that the identity of such membership is "readily ascertainable by inspection of Defendant's employment records." (**Exhibit A**, Complaint at ¶ 36.)

(including putative), both named and unnamed, is considered (28 U.S.C. § 1332(d)(1)(D)).

17. Defendant is a citizen of California and Delaware. For diversity purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." See *Hertz Corp. v. Friend,* 130 U.S. 1181, 1192-93 (2010). Now and at the time this action was commenced in state court, Defendant was, and remains, a Delaware corporation with its principal place of business in San Diego county, California where it has its corporate offices and headquarters, and where Defendant's executive and administrative functions are located.

18. Defendant has reviewed its personnel records and payroll and tax records and has identified putative class members who are not citizens of California or Delaware. One putative class member, who worked for Defendant at St. Francis Medical Center in Lynwood, California is a citizen of Arizona and permanently resides in Gilbert, Arizona. Another putative class member, who worked for Defendant at San Leandro Hospital in San Leandro, California, is a citizen of Nevada and permanently resides in Reno, Nevada. These individuals' permanent mailing addresses and tax verification forms establish that they are citizens of Arizona or Nevada, respectively, and not California or Delaware. Defendant, which temporarily employs many traveling nurses who reside in other states at locations in California, is aware that many other members of the putative class are also citizens of states other than California or Delaware.

19. Accordingly, there is a least one member of the proposed class who is a citizen of a state different from Defendant, and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### F.     The Amount in Controversy Exceeds $5,000,000[3]

20.     CAFA's $5,000,000 threshold for the "amount in controversy," is not the same as the amount ultimately recovered. *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10- 4280-GHK JCx, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010).  Rather, in assessing the amount in controversy, courts must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiffs' complaint, not what a defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).  After all, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).  Additionally, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated"); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint") (citations omitted).

21.     Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14 at 42.  In addition, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of

---

[3] The alleged damage calculations set forth in the instant Notice of Removal are provided for purposes of removal only and based on the presumption of truth to which Plaintiff's allegations are entitled. Defendant denies that Plaintiff or any putative class member is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's claims and her and the putative class' alleged damages at every stage of this case.

-7-
DEFENDANT'S NOTICE OF REMOVAL
LEGAL\51033611\2

interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14 at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case … [**Section 1332(d)] should be read broadly, with a strong preference that interstate class actions should be heard in federal court if removed by the defendant**." (emphasis added)]

22. In calculating the amount in controversy, the claims of class members may be aggregated to determine whether the amount in controversy has been satisfied. 28 U.S.C. § 1332(d)(6).

23. Plaintiff's Complaint is silent as to the total amount in controversy. However, as demonstrated herein, the Plaintiff's allegations, when accepted as true, place more $5,000,000 in controversy in this lawsuit.

24. By demonstrating that the amount in controversy exceeds the CAFA threshold, Defendant in no way concedes the validity of Plaintiff's claims in any respect or the likelihood that Plaintiff will obtain certification or recover anything.

25. Plaintiff's Ninth Cause of Action alleges violations of the California Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.* (*See* **Exhibit A**, Complaint ¶¶ 82 - 85.) which has the effect of extending the statute of limitations on certain of Plaintiff's claims from three to four years. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL); *Morgan v. Rohr, Inc.*, Case No.: 3:20-cv-00574-GPC-AHG, 2020 WL 3317202, at *3 (S.D. Cal. Jun. 18, 2020)(stating that recovery for meal period premiums is allowed under the UCL); (*See also* **Exhibit A**, Complaint, at ¶¶ 84-85 (specifically seeking to recover restitution under the UCL).)

### 1. Plaintiff's Third Cause of Action (Unpaid Meal Premiums)

26. With respect to her meal period claim, Plaintiff alleges that she and Putative Class Members did not receive compliant meal periods when working more than five (5) and/or ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period. (**Exhibit A**, Complaint at ¶¶ 59-61.) Plaintiff alleges that Defendant failed to pay Plaintiff and Putative Class Members one additional hour of pay at the employee's rate of compensation for each work day that a compliant meal period is not provided. (**Exhibit A**, Complaint at ¶ 60.) Plaintiff further alleges that Defendant willfully failed to provide Putative Class Members with meal breaks. (**Exhibit A**, Complaint at ¶ 59.) Plaintiff alleges "systemic unlawful employment policies and practices that resulted in violations of the California Labor Code." (**Exhibit A**, Complaint at ¶ 2.).   Plaintiff seeks to recover unpaid meal period premium payments.  (**Exhibit A**, Complaint at ¶ 62.)

27. Based on a review of Defendant's records, Putative Class Members' shifts regularly exceeded five (5) hours per day and Putative Class Members worked 106,670 workdays during the four-year statute of limitations, with an average hourly wage of over $20.00 per hour. Thus, based on Plaintiff's allegation that she and the Putative Class Members were consistently denied legally-compliant meal periods when they worked more five (5) hours in a shift, the amount in controversy for Plaintiff's third cause of action for meal period premiums is equal to **$2,133,400**, based on the calculation of 106,670 workdays **x** the minimum average hourly rate or $20.00 = $2,133,400.

### 2. Plaintiff's Fourth Cause of Action (Unpaid Rest Premiums)

28. With respect to her rest period claim, Plaintiff alleges that she and Putative Class Members were not authorized or permitted to take  required rest periods. (**Exhibit A**, Complaint at ¶¶ 23.)  Plaintiff alleges that Defendant willfully failed in its affirmative

obligation to authorize and permit Plaintiff and Putative Class Members to receive compliant, duty-free rest periods of not less than ten (10) minutes for every four hours worked (or major fraction thereof). (**Exhibit A**, Complaint at ¶ 64.) Plaintiff alleges that Defendant failed to pay her and Putative Class Members one additional hour of pay at the employee's rate of compensation for each work day that a compliant rest period was not provided. (**Exhibit A**, Complaint at ¶¶65-66.) Plaintiff further alleges that Defendant willfully failed to pay Putative Class Members for missed rest periods. (*Id*.) Plaintiff seeks to recover unpaid rest period premium payments. (**Exhibit A**, Complaint at ¶ 67.) As indicated above, Plaintiff alleges "systemic unlawful employment policies and practices that resulted in violations of the California Labor Code." (**Exhibit A**, Complaint at ¶ 2.).

29. Based on a review of Defendant's records, Putative Class Members' shifts regularly exceeded four (4) hours per day and Putative Class Members worked 106,670 workdays during the four-year statute of limitations, with an average hourly wage of over $20.00 per hour. Thus, based on Plaintiff's allegation that she and the Putative Class Members were consistently denied legally-compliant rest periods when they worked more four (4) hours in a shift, the amount in controversy for Plaintiff's fourth cause of action for rest period premiums is equal to **$2,133,400**, based on the calculation of 106,670 workdays **x** the minimum average hourly rate or $20.00 = $2,133,400.

### 3. Plaintiff's Seventh Cause of Action (Final Wages Not Timely Paid)

30. With respect to her seventh cause of action for waiting time penalties, Plaintiff alleges, without qualification, that Defendant intentionally and willfully failed to pay Plaintiff and the other class members who were no longer employed their wages within seventy-two (72) hours of termination. (**Exhibit A**, Complaint at ¶ 76.) Plaintiff seeks to recover each employee's wages which continue to accrue for 30 days following their termination and states that she is seeking to recover waiting time penalties for

herself and **all** other employees whose employment was terminated within the statutory period. (**Exhibit A**, Complaint at ¶¶ 5, 77.)  The statute of limitations on Plaintiff's waiting time penalties claim is three years. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1404 (2010); see also Cal. Civ. Proc. Code § 338(a).

31. Based on a review of Defendant's employment records, Defendant has had more than 2,100 Putative Class Members terminate their employment within the three year statute of limitations. Using the average rate of pay for the past three years according to Defendant's pay data, which is over $20.00, as the applicable rate of pay, and assuming a conservative average shift length of 6 hours (Defendant's records show that the average length of a Putative Class member's shift is over 6 hours), the amount in controversy for Plaintiff's waiting time claim is more than **$7,560,000**, based on the calculation of the number of terminated Putative Class Members within the three year period x the average rate of pay of $20.00 x 6 hours x 30 days.

### 4. Minimum Amount in Controversy for Plaintiff's Claims

32. Based on the foregoing, the amount in controversy for Plaintiff's claims well exceeds the $5,000,000 threshold, even without assigning any value to the following causes of action: (1) Failure to Pay All Regular and Minimum Wages; (2) Failure to Pay All Overtime Wages; (5) Untimely Payment of Wages; (6) Wage Statement Violations; or (8) Failure to Reimburse Business Expenses.[4]

33. The **minimum** amounts placed into controversy by **only three** of Plaintiff's causes of action are over $10,000,000.

**Third cause of action = $2,133,400**

**Fourth cause of action = $2,133,400**

**Seventh cause of action = $7,560,000**

34. Thus, the amount placed in controversy by Plaintiff's Complaint is well over $5,000,000.

---

[4] Defendant does not waive its right to present arguments or evidence as to the value of these causes of action on any remand motion that may be filed Plaintiff.

### 5. Attorney's Fees

35. Attorneys' fees are also includable in the amount in controversy where the underlying statute authorizes an award of fees. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013). Plaintiff is seeking permitted attorneys' fees. (**Exhibit A**, Complaint at Prayer for Relief, k.) The Ninth Circuit has recognized 25% as an appropriate benchmark for fee awards in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under that benchmark, and based on the demonstrated amount in controversy for causes action three, four, and seven, it is reasonable to place the attorneys' fees in controversy at a minimum of **$2,956,700**. Adding that amount to the previously calculated minimum values only serves to underscore the conclusion that this case easily exceeds the $5,000,000 threshold.

## VI.   CONCLUSION

36. This Court has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act. To the extent that this Court lacks original jurisdiction over any of Plaintiff's claims, it has supplemental jurisdiction over those claims. This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests the opportunity to submit evidence, and points and authorities supporting the removal of this action.

WHEREFORE, Defendant removes the above-action to this Court.

Dated:  February 19, 2021                COZEN O'CONNOR

By: *s/ Craig Schloss*
CRAIG SCHLOSS
BRETT GREVING
Attorneys for Defendant
HOST HEALTHCARE, INC.