Nicholas J. Ferraro (State Bar No. 306528)
Lauren N. Vega (State Bar No. 306525)
Ferraro Vega Employment Lawyers, Inc.
2305 Historic Decatur Road, Suite 100
San Diego, California 92106
(619) 693-7727 main / (619) 350-6855 facsimile
lauren@ferrarovega.com / nick@ferrarovega.com

Attorneys for Plaintiff Sarah Blount

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BLOUNT,<br><br>        Plaintiff,<br><br>    v.<br><br>HOST HEALTHCARE, INC.,<br><br>        Defendant. | Case No. 21-CV-310-MMA (WVG)<br><br>**Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement**<br><br>Action Filed: November 16, 2020<br>Removed:     February 19, 2021<br>Trial Date:    Not Set<br><br><u>Preliminary Approval Hearing</u><br>Date:         August 9, 2021<br>Time:        2:30 p.m.<br>Judge:       Hon. Michael M. Anello<br>Courtroom:  3D |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND ................................................................................................1

   A.  Summary of the Parties, Investigation, Litigation, and Settlement Negotiation................1

   B.  Overview of the Settlement Terms ................................................................5

   C.  Settlement Administration and Notice to the Class ........................................7

   D.  Released Claims................................................................................................7

III. LEGAL ARGUMENT ........................................................................................8

   A.  Provisional Class Certification Under Rule 23 is Appropriate ........................8

      1.   Numerosity – There are more than 900 Class Members ........................9

      2.   Commonality – *All claims are for California wage and hour violations*................9

      3.   Typicality – *Plaintiff suffered the same alleged harms as the Class*........................10

      4.   Adequacy of Representation – *There are no conflicts among Class Members*........10

      5.   Predominance & Superiority – *Class-wide resolution is proper*............................11

      6.   Appointment of Class Counsel – *Plaintiff's counsel satisfies Rule 23(g)* ...............12

   B.  The Proposed Settlement Meets the Standards for Preliminary Approval .....................12

      1.   Adequacy of Representation........................................................................13

      2.   Arm's Length Negotiation........................................................................13

      3.   Adequacy of Relief Provided to the Class................................................14

          i.   Costs, risks, and delay of trial and appeal ...................................14

          ii.   Effectiveness of proposed method of distributing relief............................15

          iii.   Terms of the proposed award of attorneys' fees and costs .......................16

          iv.   Agreements made in connection with the proposed settlement .................17

          v.   Equitable treatment of Class Members ........................................17

   C.  The Court Should Approve the PAGA Settlement ........................................19

IV.      CONCLUSION................................................................................................20

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary
Approval of Class Action Settlement - Case No. 21-CV-310-MMA (WVG)

## TABLE OF AUTHORITIES

**Federal Authority**

*Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961 (C.D. Cal. June 17, 2019) .........................20

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ....................................11

*Baumann v. Chase Inv. Servs. Corp.*, 747 F. 3d 1117 (9th Cir. 2014).........................................19

*Bayat v. Bank of the West*, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .................................14

*Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ....................................18

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).........................................10

*Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43 (2008) ...........................................16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)..........................................8

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................16

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012).......................................10

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)............................................10

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1988)........................................9, 10, 13, 15

*Haralson v. U.S. Aviation Services Corp.* 383 F. Supp. 3d 959 (N.D. Cal. 2019) ....................19

*Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ..........................20

*HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) .................................................14

*Immigrant Assistance Project of Los Angeles Cty. Fed'n of Lab. (AFL-CIO)*

   *v. I.N.S.*, 306 F.3d 842 (9th Cir. 2002) .................................................................9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012). ................................................13

*In re M.L. Stern Overtime Litig.*, 2009 WL 995864 (S.D. Cal. Apr. 13, 2009)..........................20

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ..........................20

*Mangold v. Cal. Pub. Utils Comm'n*, 67 F. 3d 1470 (9th Cir. 1995)..........................................16

*Martin v. AmeriPride Svs., Inc.*, 2011 WL 2313604 (S.D. Cal. June 9, 2011)..........................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................14

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)...........................................................10

*Pokorny v. Quixtar Inc.*, 2011 WL 2912604  (N.D. Cal. July 20, 2011)....................................16

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013)....................................10

- ii -

*Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948 (9th Cir. 2009)..................................................15

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ..........................................................9

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...................................................................8

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................17

*Toys 'R' Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ...........................18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016).......................................................11

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)..................................18

*Vizcaino v. Microsoft Corp*, 290 F.3d 1043 (N.D. Cal. 2002) ....................................................16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................9

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. 2011) ...............................18


**California Authority**

*Arias v. Superior Court*, 46 Cal. 4th 969 (2009)........................................................................19

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ........................................19

*La Fleur v. Medical Management Intern, Inc.*, 2014 WL 2967475 (C.D. Cal. June 25, 2014)...18

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016)..............................................................16


**Statutes**

Federal Rule of Civil Procedure 23 .........................................................................................*passim*

California Labor Code § 2699…...……………………………………………… 1, 19, 20, 21

***

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary
Approval of Class Action Settlement - Case No. 21-CV-310-MMA (WVG)

1

# I.     INTRODUCTION

Plaintiff Sarah Blount ("Plaintiff") seeks preliminary approval of this proposed wage and hour class and Private Attorneys General Act ("PAGA") settlement with Defendant Host Healthcare, Inc. ("Defendant") based on the following submissions:

1.     Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement;

2.     this Memorandum of Points and Authorities;

3.     the Declaration of Nicholas J. Ferraro, including Exhibits 1 to 5:

    a.  Exhibit 1 – Joint Stipulation and Settlement Agreement

    b.  Exhibit 2 – Notice of Class Action Settlement

    c.  Exhibit 3 – Request for Exclusion Form

    d.  Exhibit 4 – Notice to LWDA of Proposed PAGA Settlement

    e.  Exhibit 5 – Settlement Administration Quote (Simpluris)

4.     the Declaration of Lauren N. Vega; and

5.     the Proposed Order.

Based on these submissions, Plaintiff respectfully requests that the Court (i) conditionally certify the class for settlement purposes under Rule 23(a); (ii) appoint Plaintiff as the class representative and Plaintiff's counsel as Class Counsel under Rule 23(g); (iii) preliminarily approve the settlement under Rule 23(e); and (iv) approve the proposed allocation to PAGA penalties as fair, reasonable, and adequate under Labor Code § 2699(l) (2).

# II.     BACKGROUND

**A.     Summary of the Parties, Investigation, Litigation, and Settlement Negotiation**

Defendant is a healthcare staffing company that employs internal corporate employees and external traveling nurses in hourly, non-exempt positions throughout California.  From November 2019 to September 2020, Plaintiff worked for Defendant as a non-exempt Account Coordinator paid on an hourly basis, plus bonuses and commissions.  Declaration of Nicholas J. Ferraro ("Ferraro Decl."), ¶ 2.

After Plaintiff's termination and prior to filing the PAGA notice and complaint initiating this action, Plaintiff's counsel conducted an extensive investigation into the underlying legal claims.  This included interviewing Plaintiff, reviewing employment and compensation records, receiving information from Plaintiff and through publicly-available sources, and conducting research regarding the applicable legal issues.  Ferraro Decl., ¶ 3.

On October 22, 2020, Plaintiff filed a Notice of Labor Code Violations with the LWDA ("PAGA notice").  The PAGA notice identified the legal claims that would ultimately be set forth in the operative complaint now before this Court.  Ferraro Decl., ¶ 4.

After Plaintiff filed the PAGA notice, counsel for Defendant contacted Plaintiff's counsel regarding the putative action.  The parties discussed the merits and factual and legal arguments in support of the respective positions and agreed to exchange information and documents from the outset of the case.  Ferraro Decl., ¶ 5

On November 16, 2020, Plaintiff filed a class action complaint in San Diego Superior Court, alleging the following claims under the California Labor Code: (1) failure to pay all regular and minimum wages; (2) failure to pay all overtime wages, (3) meal period violations, (4) rest period violations, (5) untimely payment of wages, (6) wage statement violations, (7) wage statement penalties, (8) failure to reimburse business expenses; and (9) violations of the Unfair Competition Law set forth in Business and Professions Code § 17200 *et seq.*  Ferraro Decl., ¶ 6.

Throughout December 2020, counsel for the parties exchanged information, spreadsheets, commission reports, ADP records and data, wage statements, and other documents relevant to the dispute, predominantly those applicable to Plaintiff's employment and earnings.  Ferraro Decl., ¶ 7.

Due the complex spreadsheets at issue, Plaintiff's counsel retained an economic consultant in December 2020 to provide a forensic account of exactly how Defendant was paying overtime, and the amount of alleged underpayments resulting from Defendant's method of calculating the regular rate of pay.  Plaintiff's counsel shared this breakdown with Defendant's counsel, along with supporting legal authority and argument.  Aside from the

- 2 -

method of overtime calculation, counsel discussed and exchanged information regarding all aspects of the legal claims and defenses, and maintained disputes regarding the scope of the class based on the job duties of the respective workforce.  From the beginning, Defendant argued that nurses worked at different worksite locations rendering class certification unlikely; whereas Plaintiff contended that Defendant's payroll administration and methods of payment to employees were uniform regardless of job duties or location of the non-exempt employees, and therefore class certification was likely.  Counsel for both parties concluded that agreement was unlikely regarding the scope of the putative class, and the dispute over the putative class members would require discovery motions that would ultimately affect and inform the likelihood of class certification on behalf of *all* non-exempt employees (*i.e.*, nurses and corporate employees).  Ferraro Decl., ¶ 8.

On January 4, 2021, after the 65-day notice period following Plaintiff's October 22, 2020 PAGA notice had expired, Plaintiff filed a first amended class and representative action complaint in San Diego Superior Court, adding claims for civil penalties under the PAGA based on the facts and allegations set forth in the PAGA notice and the original complaint.  At this time, based on counsels' prior discussions and analysis, the parties contemplated mediating the case and discussed prospective mediators.   In late January, mediation discussions stalled given the dispute over the scope of the putative class and the parties put on hold further discussions to mediate pending resolution of anticipated threshold discovery disputes.  Ferraro Decl., ¶ 9.

On February 18, 2021, Defendant answered Plaintiff's complaint in state court.  On February 19, 2021, Defendant filed a notice of removal in the state court proceeding and removed the action to the Southern District under the Class Action Fairness Act of 2005 ("CAFA").  29 U.S.C. § 1332(d).  Plaintiff thereafter served a full set of interrogatories and requests for documents, including requests tailored to class-certification issues and jurisdictional issues.   Ferraro Decl., ¶ 10.

On February 23, 2021, the Court set dates for a telephonic status conference, ENE and CMC.  The parties made initial disclosures of documents and information.  ECF No. 4.  The

- 3 -

1    parties also agreed to make efforts to resolve the case at the ENE, including discussion of one of

2    the principal disputes regarding the scope of the putative class.   During this time, Plaintiff's

3    counsel continued to work with witnesses and Plaintiff to evaluate the claims and prepare for

4    class certification.  Ferraro Decl., ¶ 11.

5          Magistrate Judge William V. Gallo held a telephonic conference on April 9, 2021 in

6    advance of an ENE that was scheduled for April 14, 2021.  ECF No. 4.  Prior to the first ENE,

7    to prepare for a potential class-wide resolution, Defendant provided Plaintiff's counsel with a

8    10 percent sampling of compensation spreadsheets, time records, commission reports, bonus

9    reports, Excel data, and wage statements for the corporate employees only.   The first ENE

10   largely focused on a discussion of liability on the various wage and hour claims.   The first ENE

11   did not result in a settlement.   However, at the conclusion of the first ENE, Defendant agreed to

12   provide additional information so that Plaintiff could conduct a full liability damage analysis on

13   the wage and hour claims with her expert witness.   A continued ENE was scheduled.   Plaintiff

14   contended that, at this stage of the litigation, the nurses should be included in any resolution.

15   Without compensation data and records for the nurses, Plaintiff was unable to resolve the case

16   on a class-wide basis.   As a result, following the first ENE, Defendant provided an additional 10

17   percent sampling of compensation spreadsheets, time records, commission reports, bonus

18   reports, Excel data, and wage statements for both the nurses and the corporate workforce.

19   Therefore, prior the second ENE-mediation, Plaintiff obtained a significant 20 percent sampling

20   of records for the damage analysis to evaluate Defendant's liability exposure.   Pay data was

21   produced reflecting the relevant compensation information for the putative class, including the

22   external nurse employees.  Ferraro Decl., ¶ 12.

23         Additionally, in advance of the second ENE, Defendant provided an exemplar set of

24   employee handbooks in effect during the class period and an exemplar set of all other relevant

25   employment policies and documents, such as expense reimbursement policies and forms,

26   overtime and commission policies and forms, and a legend showing all forms of remuneration

27   listed on each employee paystubs.  Ferraro Decl., ¶ 13.  Plaintiff, through counsel, then worked

28   with her expert witness to adequately calculate the prospective liability and damages arising

- 4 -

from Plaintiff's claims.  The Court held a continued ENE on May 18, 2021.  ECF No. 18.  The ENE lasted almost all day, and was supervised by Magistrate Judge Gallo, who evaluated the case and assisted the parties in reaching a resolution of the claims on a class-wide basis.  Judge Gallo, through the Court's ENE process, helped the parties successfully resolve this wage and hour class action.  Ferraro Decl., ¶ 13; ECF No. 18.

Both ENEs were attended by all counsel of record, Plaintiff, and numerous representatives from Defendant, including the chief executive officer, chief financial officer, and other key decisionmakers.  Ferraro Decl., ¶ 14; ECF No. 18.

**B.    Overview of the Settlement Terms**

The parties agreed to settle the case at the continued ENE for the "Gross Settlement Amount" of $1,550,000.  The parties then negotiated and agreed on a long-form settlement agreement.  The Settlement is memorialized in the Parties' "Joint Stipulation and Settlement Agreement" (attached as Exhibit 1 to Ferraro Decl., hereinafter referred to as the "Settlement").  The "Class" or "Class Members" are defined as follows:

> **All individuals employed by Defendant Host Healthcare, Inc. in California as hourly workers and/or non-exempt employees, including those employed in California as corporate employees and travel nurses, during the Class Period.**

Settlement, § I.E.i.  The proposed Settlement provides compensation to Class Members who worked during the period of November 16, 2016 to the date of Preliminary Approval (the "Class Period"), Settlement, § I.I, as follows subject to Court approval:

1.    Gross Settlement Amount of $1,550,000, which shall be proportionately increased if the number of workweeks estimated as of the date of settlement increases by 10 percent or more.  Settlement, § I.U.

2.    Net Settlement Amount allocated to putative class members on a pro rata basis based on the number of workweeks worked during the Class Period.  Settlement, § I.X.

3.    Employer-side payroll taxes to be paid entirely by Defendant.  Settlement, § III.L.8.a.

- 5 -

4.      <u>Attorneys' Fees</u> of up to 30 percent of the Gross Settlement Amount. Settlement, § I.C.

5.      <u>Litigation Costs</u> up to $10,000.  Settlement, § I.M.

6.      <u>Service Award</u> of up to $10,000 to Plaintiff Blount.  Settlement, § I.K.

7.      <u>PAGA Payment</u> of $50,000 for settlement of civil penalties of the PAGA: 75% ($37,500) to the California Labor & Workforce Development Agency ("<u>LWDA</u>") and 25% ($12,500) to the employees who worked at any time from October 22, 2019 through the date of preliminary approval ("<u>Aggrieved Employees</u>" and "<u>PAGA Period</u>").  Settlement, § I.Z.

8.      <u>Settlement Administration Costs</u> currently estimated at $10,000 and not to exceed $15,000.  Settlement, § I.A.

After all court-approved deductions from the Gross Settlement Amount, the remaining sum (the Net Settlement Amount), estimated at $1,017,500 will be distributed to Class Members who do not opt-out.  Ferraro Decl., ¶ 16; Settlement, § I.X, AA.  There were approximately estimated 926 Class Members who worked during the time period of November 16, 2016 to May 16, 2021.  Settlement, § I.E.2. Submission of a claim form is not required.  Settlement, § I.V.

The Net Settlement Amount ("NSA") will be allocated as follows: the Settlement Administrator will pay an "<u>Individual Settlement Share</u>" to each Participating Class Member (*i.e.,* the Class Members who do not affirmatively opt-out of the Settlement) that is equal to the number of weeks he or she was employed as a non-exempt employee or hourly worker by Defendant in California during the Class Period, divided by the total number of weeks worked by all Participating Class Members during the Class Period.  Settlement, § I.V, III.G.1.a.  The same allocation method will apply to Aggrieved Employees who worked during the PAGA Period with respect to payment of the PAGA Payment.  Settlement, § III.I.6.  Settlement payments are allocated 20 percent to wages and 80 percent to penalties.  A Form W-2 will be issued for wages, and a Form 1099 for penalties.  Settlement, § III.G.2.

- 6 -

Following Final Approval and the Effective Date of Settlement, each Class Member who did not opt-out will be mailed their share of the NSA, without the need to submit a claim form.  Settlement, § III.L.8.b.  All Aggrieved Employees will be mailed their share of the PAGA Payment even if they opt-out of the Settlement.  Settlement checks will be void 180 after issuance.  Settlement, § III.L.9.  200 days after issuance, any uncashed Settlement checks will be sent to the State Controller Unclaimed Property Division in the name of the Participating Class Member (*i.e.*, a Class Member who does not opt-out) so that he or she may make a claim to request that money from the State of California.  *See* Unclaimed Property Search, Office of the Controller of the State of California, https://ucpi.sco.ca.gov/UCP/Default.aspx. Settlement, § III.L.9.

## C.    Settlement Administration and Notice to the Class

The parties selected Simpluris, Inc. to administer the settlement.  Following settlement approval, Simpluris ("Administrator") will conduct a skip trace to update Class Member addresses, and mail a Notice of Class Action Settlement ("Class Notice") and optional Exclusion Form to each member of the Class as identified by Defendant's employment records. Ferraro Decl., ¶ 1, Exhs. 2, 3; Settlement, §§ I.H., I.S., Exhs. A, B.

The proposed Class Notice advises Class Members of their right, manner, and timing to (1) participate in the Settlement without submitting a claim; (2) dispute the basis of the information provided in the Class Notice, such as the number of weeks they worked or the amount of their Individual Settlement Share; (3) object to the Settlement; and (4) opt-out of the Settlement using the Exclusion Form provided.  Ferraro Decl., ¶ 1, Ex. 2; Settlement, § I.H, Ex. A.  The Class Notice informs Class Members of estimated settlement payments, the release to be given, the date of the Final Approval hearing, and how to obtain further information through Class Counsel, the Administrator, or on the Court's docket.  Ferraro Decl., ¶ 1, Ex. 2; Settlement, § I.H, Ex. A.

## D.    Released Claims

The "Released Claims" are defined in the Settlement and limited to "all claims that are asserted, or could have been reasonably asserted, against Defendant based on the factual

1    allegations in the First Amended Complaint, arising or accruing during the Class Period … [.]"

2    The release is properly limited in terms of time and scope and is provided to Defendant in

3    exchange for the consideration provided in the Settlement.  Settlement, § I.EE.

4                              **III.    LEGAL ARGUMENT**

5            The Ninth Circuit has a strong judicial policy that favors settlements in class actions.

6    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  When the parties settle

7    before class certification, the court must "peruse the proposed compromise to ratify both the

8    propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d

9    938, 952 (9th Cir. 2003).  A reviewing court must therefore engage in two, separate inquiries:

10   (1) whether the proposed class meets the certification requirements and (2) whether the

11   proposed settlement is "fundamentally fair, adequate, and reasonable."  *Id.*  At the preliminary

12   approval stage, the reviewing court considers whether it is likely to approve of the proposal and

13   certify the class.  Fed. R. Civ. P. 23(e) (1) (B).

14   **A.      Provisional Class Certification Under Rule 23 is Appropriate**

15           Regarding the first inquiry, Federal Rule of Civil Procedure 23 establishes four

16   prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4)

17   adequacy of representation.  Fed. R. Civ. P. 23(a) (1)-(4). Additionally, under Rule 23(b) (3),

18   common questions must predominate over individual questions and the class action device must

19   be "superior to other available methods for fairly and efficiently adjudicating the controversy."

20   *Id.*  The Court does not finally certify a class when granting preliminary approval of a

21   settlement for the purpose of directing notice to class members, but rather determines whether

22   "the court will likely be able to . . . certify the class for purposes of judgment on the proposal."

23   Fed. R. Civ. P. 23(e) (1) (B).  And, lastly, "a court that certifies a class must appoint class

24   counsel" considering the factors set forth in Rule 23(g).

25           Here, Plaintiff seeks conditional certification of a Class defined in the Settlement as "All

26   individuals who worked for Host Healthcare in California as a non-exempt or hourly employee

27   at any time during the Class Period, including corporate employees and travel nurses."

28   Settlement, § I.E.1.  The Class Period is defined as "[t]he time period from November 16, 2016

- 8 -

1   to the date of the Preliminary Approval." Settlement, § I.I. Plaintiff satisfies the standards set

2   forth in Rule 23(a), Rule 23(b) (3), and Rule 23(g), which are addressed in turn.

3          **1.       Numerosity – There are more than 900 Class Members**

4          Under Rule 23(a) (1), the numerosity requirement is met if "the class is so numerous that

5   joinder of all members is impracticable." *Id.* "As a general matter, courts have found that

6   numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership

7   dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). There are an

8   estimated 926 Class Members rendering joinder of this number of plaintiffs impractical. Courts

9   have certified classes with far fewer members. *See Immigrant Assistance Project of Los*

10  *Angeles Cty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002). Therefore,

11  the numerosity requirement is satisfied.

12         **2.       Commonality – *All claims are for California wage and hour violations***

13         Under Rule 23(a) (2), there must be "questions of law or fact common to the class."

14  Fed. R. Civ. P. 23(a) (2). Commonality is met if plaintiffs and class members' claims "depend

15  upon a common contention . . . capable of class-wide resolution—which means that

16  determination of its truth or falsity will resolve an issue that is central to the validity of each one

17  of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule

18  23(a) (2) commonality requirements are "minimal" and "construed permissively." *Hanlon v.*

19  *Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1988). Only "a single common question"

20  required. *Dukes*, 564 U.S. at 359. Here, Plaintiff's complaint alleges questions common to the

21  entire class for all claims, including the legality of Defendant's method of calculating the

22  regular rate of pay, paying overtime wages, reimbursement policies, and meal and rest period

23  practices, along with derivative issues relating to the reflection of wages on the wage statements

24  issued to Class Members, and whether civil and statutory penalties may apply for Defendant's

25  alleged wage and hour violations. Plaintiff contends that answering these questions would

26  resolve class-wide issues "in one stroke." The proposed Class meets the commonality

27  requirement.

28

### 3.      Typicality – *Plaintiff suffered the same alleged harms as the Class*

Under Rule 23(a) (3), the typicality requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a) (3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical under Rule 23(a) (3) if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff's claims are typical of the putative class because she was a non-exempt employee of Defendant in California during the Class Period who was subject to the same wage and hour policies and practices as those alleged on behalf of other Class Members. Ferraro Decl., ¶ 2. Plaintiff's claims are thus typical of those of the Class.

### 4.      Adequacy of Representation – *There are no conflicts among Class Members*

Under Rule 23(a) (4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). The Court must ask two questions: "(1) do the named plaintiffs and their counsels have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsels prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). First, neither Plaintiff nor her counsel has a conflict with the Class. Plaintiff elected to file a class action as opposed to an individual lawsuit or administrative claim for the benefit of other Class Members. The maximum $10,000 allocated to a Service Payment out of the $1.55 million Settlement is not disproportionate such that it would likely render Plaintiff an inadequate representative. Plaintiff will provide justification for the Service Award at the final approval stage. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Plaintiff's counsel further represents that they

has no conflicts of interest with the Class. Ferraro Decl., ¶ 18. <u>Second</u>, Plaintiff and her counsel represent that they will continue to prosecute this lawsuit as they have done throughout the matter thus far. Ferraro Decl., ¶ 18. Therefore, the adequacy requirement is met for purposes of certification.

### 5. Predominance & Superiority – *Class-wide resolution is proper*

Rule 23(b) (3)'s requirements must also be satisfied, in addition to those of Rule 23(a). Under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b) (3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). For settlement purposes, a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote greater efficiency. In a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

In this case, Plaintiff seeks to represent all non-exempt, hourly employees. Plaintiff contends there is no dispute that all Class Members were subject to the same policies throughout the Class Period and that a determination as to whether the application of those policies is unlawful as to one employee will determine whether it is unlawful for all. Ferraro Decl., ¶ 19. Because liability would be determined by looking at Defendant's uniform policies and practices, litigation of these issues in a class action as opposed to a series of individual actions is most efficient. Ferraro Decl., ¶ 19. The common issues and claims pled in Plaintiff's complaint predominate and the class action device is a superior method for adjudicating the dispute.

***

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary
Approval of Class Action Settlement - Case No. 21-CV-310-MMA (WVG)

For the foregoing reasons, Plaintiff has satisfied Rule 23(a) and Rule 23(b) (3).  Plaintiff respectfully asks that the Court conditionally certify the Class for settlement purposes.

\*\*\*

### 6.    Appointment of Class Counsel – *Plaintiff's counsel satisfies Rule 23(g)*

Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g) (2).  The Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g) (1)(A).  Here, as set forth in the declarations of Nicholas J. Ferraro and Lauren N. Vega, counsel of record for Plaintiff, Plaintiff's counsel has engaged in significant pre-litigation investigation, witness interviews, formal and informal discovery, damage analysis, and other litigation efforts on behalf of the putative class.  Ferraro Decl., ¶ ¶ 7-9, 11-14, 20; Declaration of Lauren N. Vega ("Vega Decl."), ¶ 2.  Plaintiff's counsel has extensive experience litigating class actions on behalf of both plaintiffs and defendants.  Ferraro Decl., ¶¶ 20, 27-30; Vega Decl., ¶¶ 3-5, 11.  Counsel' litigation practice focuses primarily on wage and hour claims arising under California and federal law.  Ferraro Decl., ¶ 27; Vega Decl., ¶ 15.  Plaintiff's counsel has already invested significantly in the investigation, litigation, and resolution of this case and will devote the necessary resources to bring the matter through final approval and conclusion.  Ferraro Decl., ¶ 20.  Therefore, Plaintiff respectfully asks the Court to provisionally designate Plaintiff's counsel as class counsel in this case.

Moreover, because Plaintiff's interests align with those of the Class and there are no conflicts of interest, Plaintiff respectfully asks the Court to appoint her as the class representative for the Class.

### B.    The Proposed Settlement Meets the Standards for Preliminary Approval

Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  Courts must give "proper deference" to settlement agreements because "the court's intrusion upon what is otherwise a

- 12 -

1    private consensual agreement negotiated between the parties to a lawsuit must be limited to the

2    extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

3    overreaching by, or collusion between the negotiating parties, and the settlement, taken as a

4    whole, is fair, reasonable and adequate to all concerned." *Hanlon,* 150 F. 3d at 1027 (citations

5    omitted).   Courts evaluate the "settlement as a whole, rather than assessing its individual

6    components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

7         As amended, Rule 23(e) provides that a court may approve a proposed class action after

8    considering whether: (A) the class representatives and class counsel have adequately

9    represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided

10   for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal,

11   (ii) the effectiveness of any proposed method of distributing relief to the class, including the

12   method of processing class-member claims, (iii) the terms of any proposed award of attorney's

13   fees, including timing of payment, and (iv) any agreement required to be identified under Rule

14   23(e)(3); and (D) the proposal treats class members equitably relative to each other.   Fed. R.

15   Civ. P. 23(e) (2).  Each factor is addressed in turn.

16        **1.     Adequacy of Representation**

17        Rule 23(e) (2) (A) requires the Court to consider whether "the class representatives and

18   class counsel have adequately represented the class."  *Id.*   This analysis is "redundant of the

19   requirements of Rule 23(a) (4) and Rule 23(g), respectively."   4 William B. Rubenstein,

20   Newberg on Class Actions § 13:48 (5th ed. 2020).   For the same reasons as discussed above

21   concerning adequacy of representation, Plaintiff and her counsel have and will continue to

22   adequately represent the Class.

23        **2.     Arm's Length Negotiation**

24        Rule 23(e) (2) (B) requires the Court to consider whether "the proposal was negotiated

25   at arm's length."  *Id.*  Here, the Settlement is the result of adversarial but principled disputes and

26   negotiations among experienced counsel, facilitated by Magistrate Judge Gallo following a two-

27   day ENE.   The Settlement was consummated at the continued ENE after an exchange of

28   sufficient informal discovery to allow the parties to ascertain Defendant's potential exposure

1    based on employee pay data and records. *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th

2    Cir. 2020) ("The district court . . . correctly determined there was no collusion because," among

3    other things, "the parties settled via arm's length negotiations before an experienced mediator.");

4    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A

5    settlement following sufficient discovery and genuine arms-length negotiation is presumed

6    fair.").

7              **3.       Adequacy of Relief Provided to the Class**

8              Rule 23(e) (2) (C) requires the Court to consider whether "the relief provided for the

9    class is adequate, taking into account" the numerous factors set forth below. *Id.* The amount

10   offered in the proposed settlement agreement is generally considered to be the most important

11   consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC,

12   2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716

13   F.3d 1173, 1178-79 (9th Cir. 2013)). A detailed explanation of Plaintiff's valuation and

14   settlement of the claims is set forth in <u>Paragraph 22</u> of the Ferraro Declaration.

15                    **i.       Costs, risks, and delay of trial and appeal**

16             In reaching the decision to settle this case, Plaintiff and her counsel considered the risks

17   of proceeding with the litigation. These threshold risks involved a denial of class certification

18   on all or some of the claims. Additionally, these risks included the burdens of proof to establish

19   liability, the merits of the defenses raised by Defendant, the difficulties in establishing damages

20   for purposes of proof at trial (and for purposes of manageability or class certification

21   challenges), the likelihood of success at trial, and the probability of appeal in the event of a

22   favorable judgment. Ferraro Decl., ¶ 21.

23             Continued litigation would have been expensive to all parties and would substantially

24   delay and reduce any recovery by Class Members. While Plaintiff remains confident in the

25   merits of her claims, a legitimate controversy exists as to each cause of action. Plaintiff also

26   recognizes that, in light of the scope of the claims, proving the amount of wages due to each

27   Class Member would be an expensive and uncertain endeavor, requiring additional experts and

28   analysis. In contrast, because of the Settlement, Class Members will timely receive relief and

- 14 -

avoid the risk of an unfavorable judgment.  Based on an estimated Net Settlement Amount of $1,017,500, each Class Member, on average, will receive $1,098.81.  Ferraro Decl., ¶ 17. Where, as here, the Settlement provides robust compensation relief in the face of uncertainty, delay, and further expenses, this factor weighs strongly in favor of approval.  *See Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948, 966 (9th Cir. 2009); *see also Hanlon,* 150 F.3d at 1027 ("the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

### ii.      Effectiveness of proposed method of distributing relief

As set forth in the Settlement, Class Members do not have to submit claims to receive payment.  Class Members will be identified through Defendant's employment records and the Administrator will search for Class Members' most recent address before sending the Class Notice.  The Class Notice provides information to Class Members regarding how to update their address.  Ferraro Decl., ¶ 1, Ex. 2; Settlement, § I.H, Ex. A.  All Class Members will receive payment by mail unless they opt-out of the Settlement.  Settlement, §§ I.AA, III.G.  The Administrator will calculate the "Individual Settlement Share" for each Participating Class Member (i.e., the Class Members who do not opt-out of the Settlement) based on the number of weeks he or she was employed as a non-exempt employee or hourly worker by Defendant in California during the Class Period, divided by the total number of weeks worked by all Participating Class Members during the Class Period.  Settlement, § III.G.1a.  The number of workweeks can be readily determined through Defendant's employment records.  Ferraro Decl., ¶ 24.  The Class Notice explains to Class Members how they may challenge any errors relating to their dates of employment.  The workweek method of calculating and distributing relief is fair, simple, and effectively provides a sliding scale of relief to each Class Member based on the number of respective weeks he or she worked during the Class Period.  Ferraro Decl., ¶ 24.

### iii.     Terms of the proposed award of attorneys' fees and costs

The Ninth Circuit has held that in cases where state law claims predominate, state law governs the method of calculating fee awards.  *See Mangold v. Cal. Pub. Utils Comm'n*, 67 F. 3d 1470, 1478 (9th Cir. 1995) (the Ninth Circuit has "applied state law in determining not only the right to fees, but also in the method of calculating the fees").  The California Supreme Court holds that in common fund cases, a trial court may award class counsel a fee out of that fund with an appropriate percentage of the fund.  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503-06 (2016).  The Ninth Circuit has held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp*, 290 F.3d 1043, 1047 (N.D. Cal. 2002), though California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).  "[R]egardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."  *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 66, n.11 (2008); *see e.g., Laffiite*, 1 Cal. 5th at 485-87 (affirming trial court's granting of a fee request for one-third of a $19 million settlement).

Here, the Settlement provides that the maximum amount of fees to be sought by Plaintiff's counsel is $465,000 (30 percent of the Gross Settlement Amount).  This fee provision does not "call[] into question the fairness of the proposed settlement" as it is in line with similar cases in this court and others. *Pokorny v. Quixtar Inc.*, No. 07-0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011); *see, e.g., Martin v. AmeriPride Svs., Inc.*, 2011 WL 2313604, *8 (S.D. Cal. June 9, 2011) ("courts may award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million").   The Settlement is not conditioned on any particular award of attorneys' fees or costs and the Settlement is entirely non-reversionary.  The Settlement also provides for reimbursement of up to $10,000 in litigation expenses.  If the Court grants the instant Motion, Plaintiff will detail the basis for the attorneys' fees, the hours expended, and expenses advanced at the final approval stage.  Ferraro Decl., ¶ 25.

- 16 -

iv.        **Agreements made in connection with the proposed settlement**

Rule 23(e) (3) requires the parties "file a statement identifying any agreement made in connection with the [settlement] proposal." *Id.*   There are no ancillary agreements or settlements other than the Settlement that is the subject of this Motion for Preliminary Approval.  Ferraro Decl., ¶ 18.

v.        **Equitable treatment of Class Members**

Rule 23(e)(2)(D) requires the Court to consider whether the proposed class action settlement "treats class members equitably relative to each other." *Id.*   In doing so, the Court determines whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  "Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated."  4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020).

As an initial matter, the Settlement provides for a Class Representative Service Award to Plaintiff up to $10,000.  This is a modest additional payment for Ms. Blount's substantial risk of stepping forward and undertaking the burden and effort to file a class action lawsuit for the benefit of others as the class representative.  The Class Representative Service Award of $10,000 accounts for less than one-percent (0.64%) of the Gross Settlement Amount.  There have been no other lawsuits filed by other employees on a class-wide basis, nor have there been any other PAGA notices lodged against Defendant Host Healthcare with the LWDA.  Without Plaintiff's initiative in pursuing this case, there would likely be no recovery and the statute of limitations for the alleged wage and hour claims would have continued to run on current and former employees unwilling or unknowing of their ability to recover past lost wages.  Ferraro Decl., ¶ 26.

The Ninth Circuit holds that service awards to named plaintiffs in class actions are permissible (and indeed usual in wage and hour class action litigation).  *See Staton,* 327 F. 3d at 977; *see also Rodriguez*, 563 F. 3d at 958-69 (finding that the payment of a service award is

- 17 -

1    "fairly typical in class actions").  In determining whether a service award is fair and reasonable,

2    courts may consider: (1) the risk to the class representative in commencing suit, both financial

3    and otherwise; (2) the notoriety and personal difficulties encountered by the class

4    representative; (3) the amount of time and effort spent by the class representative; (4) the

5    duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class

6    representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294,

7    299 (N.D. Cal. 1995)**.**  The proposed Service Award for Plaintiff in this case is fair and

8    reasonable under this useful five-factor test.

9         The Service Award is justified in light of the reputational risk Plaintiff assumed by

10   litigating her claims against her current employer.  *See Wren v. RGIS Inventory Specialists*,

11   2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) (discussing risks for employees who file

12   wage and hour class actions); *Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68

13   (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily

14   learn that a prospective employee served as a plaintiff through the internet); *La Fleur v. Medical*

15   *Management Intern, Inc.*, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000

16   to each named plaintiff in part for attesting to their fear that the lawsuit will harm their future

17   job prospects in the industry).

18        The Service Award is further appropriate because Plaintiff "remained fully involved and

19   expended considerable time and energy during the course of the litigation."  *See In re Toys 'R'*

20   *Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014).  As will be detailed in

21   her declaration filed in support of a forthcoming Motion for Final Approval (if this proposed

22   Settlement is approved), Plaintiff was dedicated and invested considerable time and energy

23   assisting her attorneys with the prosecution of the action.  Her steadfast contributions in light of

24   the risks and stresses of the litigation should be acknowledged.  Ferraro Decl., ¶ 26.

25        Lastly, the Class Representative Service Award is appropriate because Plaintiff derives

26   no monetary benefit from this case "beyond that she would receive as an ordinary class

27   member." *In re Toys 'R' Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 472 (C.D. Cal.

28   2014); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Here, absent

- 18 -

the Service Award, Plaintiff will recover no more than other Class Members, despite undergoing personal sacrifice in bringing this suit on behalf of the Class Members. She forwent the opportunity to file an individual claim for her own benefit alone so that she could vindicate the rights of others and recover compensation for them on a class-wide basis. In light of the foregoing, and in light of the relative amount of the $10,000 service award for a $1,550,000 recovery on behalf of 925 other individuals, the proposed Service Award to Plaintiff is reasonable and deserved, and does not evidence any preferential treatment. *See* Ferraro Decl., ¶ 26.

**C.     The Court Should Approve the PAGA Settlement**

Any settlement of PAGA claims must be approved by the Court. Labor Code § 2699(l)(2). The proposed settlement must be sent to the LWDA at the same time it is submitted to the Court. *Id.* As an initial matter, Plaintiff submitted the Settlement to the LWDA prior to filing the instant Motion, and thus this requirement has been satisfied.

The Court should approve the PAGA portion of the Settlement. The California Supreme Court has held that PAGA settlements need not satisfy class action requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). The Ninth Circuit has also held that PAGA actions are different from class actions. *Baumann v. Chase Inv. Servs. Corp.*, 747 F. 3d 1117, 1123 (9th Cir. 2014).

PAGA was initiated to ensure compliance with the California Labor Code in light of the government's limited enforcement resources. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the parties reach a substantial settlement providing employees with monetary compensation for underlying Labor Code violations, many of PAGA's underlying PAGA objectives are satisfied.

Nevertheless, when a PAGA claim is settled, courts hold that the relief provided for under the PAGA must be genuine and meaningful, consistent with the purpose of the statute to benefit the public. *Haralson v. U.S. Aviation Services Corp.*, 383 F. Supp.3d 959, 971-972 (N.D. Cal. 2019) (quoting *O'Connor v. Uber Techs., Inc.* (N.D. Cal. 2016) 201 F. Supp. 3d 1110, 1133).) "Where PAGA claims are settled in the same agreement with the underlying

- 19 -

1  Labor Code claims," as is the case here, "courts have also looked at the interplay of the two

2  recoveries to determine whether PAGA's purposes have been served." *Haralson*, 383 F. Supp.

3  3d at 971-72.  This Court, like others, should adopt a "sliding scale" whereby "providing fair

4  compensation to class members as employees and substantial monetary relief, a settlement not

5  only vindicates the rights of the class members as employees, but may have a deterrent effect

6  upon the defendant employer and other employers, an objective of PAGA." *Haralson*, 383 F.

7  Supp. 3d at 972.  Where a settlement of wage claims provides "robust" relief to the class, a

8  greater reduction in PAGA penalties is supported. *Haralson*, 383 F. Supp. 3d at 972.

9          Here, the $50,000 PAGA allocation is well within the range approved by California

10  courts and therefore should be approved. See *Alcala v. Meyer Logistics, Inc.*, 2019 WL

11  4452961, *9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties

12  representing 1.25 percent of gross settlement amount was reasonable, as it "falls within the zero

13  to two percent range for PAGA claims approved by courts."); *Magadia v. Wal-Mart Assocs.*,

14  *Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements

15  providing for $10,000 in PAGA penalties were preliminarily or finally approved despite total

16  settlement amounts of $900,000 and $6.9 million); *In re M.L. Stern Overtime Litig.*, 2009 WL

17  995864, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v.

18  Hanesbrands, Inc.*, 2008 WL 3385452, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA

19  settlement of 0.3 percent).

20          The enforcement nature of the PAGA provides aggrieved employees and counsel

21  discretion to effectuate the objectives of the PAGA in class settlements.  Here $50,000 from the

22  Gross Settlement Amount will be allocated to the PAGA claim: 75% ($37,500) to the LWDA

23  and the remaining 25% ($12,500) allocated to the Net Settlement Amount.  This amount is

24  reasonable given the Court's ability to reduce penalties "based on the facts and circumstances of

25  a particular case [.]"  Labor Code § 2699(h).

26                                     **IV.   CONCLUSION**

27          Plaintiff obtained a robust settlement for the class without prolonged or protracted

28  litigation in a case with strong disputes on each cause of action.  The $1,550,00 settlement

- 20 -

amount provides substantial compensation to the Class with a simple administration method and a straightforward notice process.  Class Members do not need to submit a claim to obtain payment, which will be processed automatically if they do not opt out.  No amount of money will revert back to Defendant.  Plaintiff has attained a successful and fair resolution of the claims through this Court's ENE process, and asks that the proposed settlement be preliminarily approved.

For the reasons set forth above, Plaintiff respectfully asks that the Court (1) conditionally certify the class for settlement purposes under Rule 23(a); (2) provisionally appoint Plaintiff as the class representative and Plaintiff's counsel as Class Counsel under Rule 23(g); (iii) preliminarily approve the settlement under Rule 23(e); and (iv) approve the proposed allocation to PAGA penalties as fair, reasonable, and adequate under Labor Code § 2699(l)(2).


Respectfully submitted,


Dated: July 9, 2021


FERRARO VEGA EMPLOYMENT LAWYERS, INC.


*Nicholas J. Ferraro*

Nicholas J. Ferraro
Lauren N. Vega
Attorneys for Plaintiff Sarah Blount