1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

7
8
9

| | |
|---|---|
| SARAH BLOUNT, *as an individual and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HOST HEALTHCARE, INC.,<br><br>Defendant. | Case No. 21-cv-310-MMA (WVG)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br><br>[Doc. No. 26]<br><br>**GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>[Doc. No. 27] |

        Sarah Blount ("Plaintiff") brings this putative wage and hour class action against Defendant Host Healthcare, Inc. ("Defendant"). Plaintiff moves for final approval of a class settlement pursuant to Federal Rule of Civil Procedure 23(e) and for an award of attorneys' fees and costs pursuant to Rule 23(h), as well as a class representative service award. *See* Doc. Nos. 26, 27. Defendants do not oppose Plaintiff's motions, and the Court preliminarily approved the class settlement. *See* Doc. Nos. 23, 32. On April 11, 2022, the Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2). *See* Doc. No. 33. For the reasons set forth below, the Court

**GRANTS** Plaintiff's motion for final approval of the class settlement and **GRANTS** Plaintiff's motion for attorneys' fees, costs, and a class representative award.

## BACKGROUND

Defendant Host Healthcare, Inc. is a healthcare staffing company. Doc. No. 1-3 at 27.[1] From November 2019 to September 2020, Plaintiff worked for Defendant as a non-exempt Account Coordinator. *Id.* She was paid on an hourly basis, plus bonuses and commissions. *Id.*

On October 22, 2020, Plaintiff filed a Notice of Labor Code Violations with the California Labor and Workforce Development Agency ("LWDA"). Doc. No. 1-3 at 26–35. On November 16, 2020, Plaintiff, on behalf of herself and other aggrieved employees, filed a putative class action complaint in the San Diego Superior Court alleging the following: (1) failure to pay all regular and minimum wages; (2) failure to pay overtime wages; (3) meal period violations; (4) rest period violations; (5) untimely payment of wages; (6) wage statement violations; (7) wage statement penalties; (8) failure to reimburse business expenses; and (9) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").

On January 4, 2021—after the 65-day period following the Private Attorneys General Act, Cal. Labor Code § 2698 *et seq.* ("PAGA") notice expired—Plaintiff filed a First Amended Complaint ("FAC"), adding claims for civil penalties under PAGA. On February 18, 2021, Defendant filed an answer to the FAC. The following day, on February 19, 2021, Defendant removed the action under relevant provisions of the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.*, to this Court.

On April 9, 2021, Magistrate Judge William V. Gallo held a telephonic status conference. Doc. No. 11. Judge Gallo then held an Early Neutral Evaluation conference ("ENE") on April 14, 2021. Doc. No. 12. The ENE was continued to May 18, 2021,

---

[1] Citations refers to the pagination assigned by the CM/ECF system unless otherwise indicated.

during which time Judge Gallo assisted the parties in resolving the case on a class-wide basis via oral stipulation.  Doc. No. 18.  The parties fully and finally executed a settlement agreement on July 9, 2021.  Doc. No. 20-2 at 21–42 (the "Settlement" or "Settlement Agreement").

### THE SETTLEMENT AGREEMENT

The Settlement class ("Class") consists of all individuals employed by Defendant in California as an hourly worker and/or non-exempt employee, including those employed in California as a corporate employee and travel nurse, during the Class Period (November 16, 2016 through July 30, 2021).  Doc. No. 26-1 at 5.  Some Class Members also fall into a sub-category of PAGA class members—individuals who worked during the PAGA Period (October 22, 2019 through July 30, 2021) ("PAGA Class").  *Id.* at 6. There are 1,097 total Class Members, and thirteen individuals submitted a valid and timely request to exclude themselves from the Settlement.  *Id.* at 6.  Thus, there are 1,084 participating Class Members.  *Id.* at 20.

Defendant will pay a total sum of $1,550,000 (the "Gross Settlement Amount") in full settlement of all claims.  *Id.* at 6.  The parties have allocated $50,000 of the Gross Settlement Amount as penalties under PAGA ("PAGA Penalty").  This represents just over 3% of the Gross Settlement Amount.  *Id.* at 7.

As to deductions, the parties agreed to the following: (1) attorney's fees in the amount of $465,000; (2) actual litigation costs of $6,421.50; (3) a service award to Plaintiff of $10,000; (4) $37,500, or 75%, of the PAGA Penalty to the LWDA; and (5) settlement administration costs of $15,000.  *Id.* at 6–7.  After deductions, the current estimated net settlement amount is $1,016,078.50 (the "Net Settlement Amount").  The parties have agreed that no portion of the Gross Settlement Amount will revert to Defendant.  Doc. No. 20-2 at 23.

The Net Settlement Amount will be distributed pro rata to the Class based on a share that is equal to the number of weeks the Class Member worked during the Class Period divided by the total number of weeks worked by all participating members.  *Id.* at

27.  The remaining 25% of the PAGA Penalty will be distributed to the PAGA Class based on the same pro rata method.  *Id.* at 24.  Settlement payments are allocated 20 percent to wages and 80 percent to interest, penalties, and reimbursements.  *Id.* at 28.

Individual settlement payments are estimated to average $925.81, with the highest totalling $7,713.06.  Doc. No. 26-1 at 5.

Defendant filed a statement of non-opposition to the motion.  Doc. No. 21.  The Court has received no objections to the Settlement.

## FINAL APPROVAL OF CLASS SETTLEMENT

**A.    Legal Standard**

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e).  The Rule provides that a court should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking into consideration the risks associated with continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of

formal litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  To that end, the Ninth Circuit has identified additional factors to consider, including: (1) the strength of the case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) the settlement amount; (5) the stage of the proceedings; (6) "the experience and views of counsel"; (7) whether there is a "governmental participant"; and (8) "the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)).

**B.    Discussion**

The Court proceeds by addressing Rule 23(e)(2)'s "fair, reasonable, and adequate" factors and the related factors noted by the Ninth Circuit.[2]

1.    *Adequate Representation*

Rule 23(e)(2) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  Relatedly, the Court also considers the experience and views of counsel.  *See Staton*, 327 F.3d at 959 (quoting *Molski*, 318 F.3d at 953).  "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted) (first quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.); and then quoting *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

---

[2] Because of the overlap between the Rule 23(e)(2)'s factors and the Ninth Circuit's additional factors, the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2).

Here, Class Counsel includes Nicholas J. Ferraro and Lauren N. Vega, both experienced trial attorneys who have been extensive experience litigating wage and hour class actions.  Doc. No.27-2 ("Ferraro Decl.") ¶ 22.  Further, Plaintiff, as Class Representative, has been "instrumental in representing her former coworkers," and "assisted in realizing a comprehensive and significant resolution for the Class."  Doc. No. 26-1 at 13.

Based upon their sworn declarations and the pertinent other portions of the record, the Court finds that both Plaintiff and Class Counsel have adequately represented the Settlement Class Members and therefore this factor favors approval of the Settlement Agreement.

### 2. Arm's Length Negotiation

Rule 23(e)(2) requires the Court to consider whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Courts must ensure settlements are not the product of collusion or other conflicts of interest.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947; *Staton*, 327 F.3d at 960.  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.  The Ninth Circuit has outlined several circumstances that may indicate collusion:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

*Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *20 (E.D. Cal. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 4364647 (E.D. Cal. July 30, 2020) (quoting *In re Bluetooth*, 654 F.3d at 947); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019).

The parties reached this Settlement after engaging in significant informal discovery and attending several ENE and settlement conferences with Judge Gallo. Class Counsel will not recover an unreasonable portion of the Gross Settlement Amount and no portion of that fund will revert to Defendant. *See* Doc. No. 20-2 at 23. Accordingly, the Court finds that the arm's length negotiations favor approval of the Settlement Agreement.

### 3.    Adequate Relief

Rule 23(e)(2) requires the Court to consider whether "the relief provided for the class is adequate" after assessing several factors, such as the risks associated with continued litigation, the effectiveness of proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement. Fed. R. Civ. P. 23(e)(2)(C). To determine whether the relief is adequate and in assessing the other underlying subfactors, "the Court must balance the continuing risks of litigation (including the strengths and weaknesses of Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Baker v. SeaWorld Entm't, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020). In particular,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

### a.    Risks of Continued Litigation

"In determining whether to approve a Settlement Agreement, the Court should also consider the expense, complexity and likely duration of further litigation or delay of trial and appeal." *Baker*, 2020 WL 4260712, at *7 (citing Fed. R. Civ. P 23(e)(2)(C)(i)). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (quoting *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)).

Here, if the parties had not settled, Plaintiff would have had to spend considerable time and effort litigating formal discovery, class certification, and summary judgment. Further, as Plaintiff acknowledges, "proving the liability and the amount of wages owed on a class-wide basis would be an expensive and uncertain endeavor." Doc. No. 26-1 at 15. Accordingly, the Court finds that the strength of the case, the costs associated with trial and appeal, the stage of the proceedings, and the risk of maintaining class action status throughout the trial favor approval of the Settlement Agreement.

> b. <u>Effectiveness of Proposed Relief Distribution</u>

In determining the effectiveness of distributing the proposed relief to the class and the processing of class claims, the Court should "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

In this case, the Notice of Class Action Settlement provided as follows:

> ***What Are My Options?***
>
> The purpose of this Notice is to inform you of the proposed Settlement and of your options. Each option has its consequences, which you should understand before making your decision. Your rights regarding each option, and the steps you must take to select each option, are summarized below and explained in more detail in this Notice.
>
> ***<u>Important Note</u>: Defendant will not retaliate against you in any way for either participating or not participating in this Settlement.***
>
> **DO NOTHING**: If you do nothing and the Court grants final approval of the Settlement, you will become part of this lawsuit and will receive an

Individual Settlement Payment based on the total number of workweeks you were employed by Defendant as an hourly or non-exempt employee in California during the Class Period. You will release all of the Released Claims, as defined in Section No. 9 below, and you will give up your right to pursue the Released Claims, as defined in Section No. 9 below.

**OPT OUT**: If you do not want to participate as a Class Member, you may "opt out," which will remove you from the Class and this Action. If the Court grants final approval of the Settlement, you will not receive an Individual Settlement Payment and you will not give up the right to sue the Released Parties, including Defendant, for any the Released Claims as defined in Section No. 9 below.

**OBJECT**: You may file a legal objection to the proposed settlement. If you would like to object, you may not opt out of this Settlement.

The procedures for opting out and objecting are set forth below in the sections entitled "How Do I Opt Out or Exclude Myself From This Settlement" and "How Do I Object To The Settlement?"

Doc. No. 26-2 at 11.

This method of distribution imposes no burden on the Settlement Class Members. Accordingly, the effectiveness of the proposed method of distributing relief to the Class favors approval of the Settlement Agreement.

c.   Terms of Proposed Attorney's Fees

In assessing whether the relief for a class is adequate, "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Id.*

This subfactor considers the "terms" of any proposed and agreed upon request for attorney's fees. *See* Fed. R. Civ. P. 23(e)(C)(iii). Here, the Settlement Agreement contains an attorney's fees provision which permits Class Counsel to apply for an

attorneys' fees award, which would be paid from the Gross Settlement Amount. *See* Doc. No. 20-2 at 21, 51. Class Counsel's entitlement to such award is ultimately contingent upon the corresponding motion for attorney's fees and costs, which is addressed in detail below.

The Court must be mindful when determining whether to approve a proposed attorney's fee award in the class action settlement context that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. Accordingly, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). As the Ninth Circuit recently explained

> [C]ourts should scrutinize pre-class certification settlements because plaintiffs' counsel may collude with the defendant to strike a quick settlement without devoting substantial resources to the case. The potential for collusion reaches its apex pre-class certification because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests.

> In contrast, by the time a court has certified a class — the theory goes — the parties have vigorously litigated the dispute, reducing the chance that class counsel will settle on the cheap for a quick buck. By devoting substantial time and resources to the case, class counsel has skin in the game, guaranteeing his or her interest in maximizing the size of the settlement fund. Likewise, because a district court has appointed class counsel who owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests.

*Briseño v. Henderson*, 998 F.3d 1014, 1024-25 (9th Cir. 2021) (internal citations omitted).

Here, the parties reached their Settlement prior to class certification. This requires the Court to take on the fiduciary role that would ordinarily fall to Class Counsel. *See Allen*, 787 F.3d at 1223. Upon review, the Court does not find any evidence of collusion

but the Settlement Agreement in this case does contain a "clear sailing" provision. *See* Doc. No. 20-2 at 22. However, the parties also agreed that if the Court approves a lesser attorney's fee award, the difference will revert to the Net Settlement Amount and therefore the Settlement Class, *see id.*, thus ameliorating the collusive concerns addressed in *Briseño*.

### d.   Underlying Settlement Agreement

"It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Rodriguez v. Bumble Bee Foods, LLC*, No. 17-cv-2447-MMA (WVG), 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quoting *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527). That is because a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). Further, the Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *See Mandujano v. Basic Vegetable Prod., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (first citing *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 803 (3d Cir. 1974); and then citing *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 340 v. Safeway Stores, Inc.*, No. W-3915, 1972 WL 141, at *1 (D. Kan. Feb. 4, 1972)). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" that 84% of the class filed no opposition).

Here, the Settlement Agreement provides for a Gross Settlement Amount of $1.55 million for 1,084 Class Members and, after deducting various fees and costs, each Class Member is estimated to recover, on average, $923.81. Ferraro Decl. ¶ 18. Only thirteen Class Members have opted out of the Settlement and no objections to the Settlement

terms have been received by either the attorneys, the Settlement Administrator, or the Court.  Doc. No. 27-1 at 5; Doc. No. 26-1 at 18.  Accordingly, the Court finds that the underlying Settlement Agreement favors approval of the Settlement.

   **e.** Conclusion

  Based on the foregoing, the Court finds that on balance, the relief provided for the Class is adequate and favors approval of the Settlement Agreement.

   *4.* *Equitable Treatment of Class Members*

  Rule 23(e)(2) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  In assessing this factor, courts determine whether the settlement unreasonably gives preferential treatment to the class representatives or other class members.  *See Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 291042, at *23 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

  The Settlement payments will be distributed pro rata to the Class based on a share that is equal to the number of weeks the Class Member worked during the Class Period divided by the total number of weeks worked by all participating members.  Doc. No. 20-2 at 27.  This is fair, reasonable, and adequate in light of the underlying harm and the lack of facts indicating certain Class Members suffered a disproportionate injury compared to others.  Further, although disproportionate, as discussed below, the Court finds that Plaintiff's Class Representative Service Award is reasonable.  Accordingly, the general equitable treatment of class members favors approval of the Settlement Agreement.

**C.** **Conclusion**

  Upon due consideration of the factors set forth above, the Court finds that the Class Settlement is on balance "fair, reasonable, and adequate" under Rule 23(e)(2) and

therefore **GRANTS** Plaintiff's motion for final approval of the Settlement.

**D.     PAGA Penalty**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies."  *Arias v. Superior Ct.*, 95 Cal. Rptr. 3d 588, 600 (2009).  A PAGA plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself"; therefore, "a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."  *Id.*  A plaintiff bringing a representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

Under PAGA, civil penalties collected are distributed between the aggrieved employees (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.  Cal. Lab. Code § 2699(l)(2).

While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements.  *Sanchez v. Frito-Lay, Inc.*, No. 1:14cv797-DAD-BAM, 2019 U.S. Dist. LEXIS 170556, at *31 (E.D. Cal. Sept. 30, 2019) (acknowledging the "absence of authority governing the standard of review of PAGA settlements").  "'[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement."  *Jordan v. NCI Grp., Inc.*, No. EDCV 161701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels &*

*Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)). Consequently, some district courts have used the guidance provided by the LWDA in *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez*, 2019 U.S. Dist. LEXIS 170556, at *32. In *O'Connor*, the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133. Based on LWDA's response in *O'Connor*, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson*, 383 F. Supp. 3d at 972.

First, in accordance with the statutory requirements, Plaintiff submitted the Settlement Agreement to the LWDA. Doc. No. 26-1 at 18. The Court finds it persuasive that the LWDA was permitted to file a response to the proposed Settlement and no comment or objection has been received.

The Settlement Agreement provides for a $50,000 PAGA Penalty. As noted above, this represents roughly 3.2 percent of the Gross Settlement Amount, which is within the range of penalties approved by courts. *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in PAGA penalties were preliminarily or finally approved despite total settlement amounts of $900,000 and $6.9 million); *see also Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx), 2019 U.S. Dist. LEXIS 166879, at *26 (C.D. Cal. June 17, 2019) (collecting cases in which PAGA penalties within the zero to two percent rage were approved by courts). Further, the Settlement Agreement provides

that 75% of the PAGA Penalty will be paid to the LWDA and 25% will be paid to the PAGA Class, in accordance with California Labor Code § 2699(i).  Therefore, the Court finds that the Settlement Agreement's $50,000 PAGA Penalty is reasonable, fundamentally fair, and adequate.

### ATTORNEY'S FEES AND COSTS

Plaintiff seeks and award of attorney's fees and costs pursuant to California Labor Code §§ 226, 1194, 2802, and 2699 and California Code of Civil Procedure § 1021.5. Doc. No. 27-1 at 10.  Plaintiff requests fees in the aggregate amount of $465,000, which is 30% of the Gross Settlement Amount.  *Id.*

**A.   Attorney's Fees**

   *1.    Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  And as mentioned above, in addition to the reasonableness inquiry mandated under Rule 23(h), "district courts must now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate'" pursuant to Rule 23(e).  *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). Importantly, "whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

The Court has discretion in a common fund case such as this to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, 25% of a common fund is the benchmark for fee awards. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

explanation in the record of any 'special circumstances' justifying a departure.").  Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton*, 327 F.3d at 965).

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method.  *See id.* at 1050–51.

    *2.   Discussion*

As noted above, Plaintiff on behalf of Class Counsel requests $465,000 in fees, or 30% of the Gross Settlement Amount.  This amount exceeds the Ninth Circuit's "benchmark" for a reasonable fee award under the percentage-of-recovery method.  *See, e.g.*, *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 570 (9th Cir. 2019) (noting the 25% benchmark).  As discussed below, it is also more than Class Counsel's fees would be if calculated using the lodestar method and "[i]f the lodestar amount exceeds the 25% benchmark for percentage-of-recovery awards, a second look to evaluate the reasonableness of the lodestar calculation is appropriate." *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019).

    a.   <u>Lodestar Calculation</u>

In order to determine the lodestar figure, the Court calculates the number of hours reasonably expended on the litigation and then multiplies that number by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Court first considers whether Class Counsel's hourly rates are reasonable.  A reasonable hourly rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience,

and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Plaintiff requests hourly rates of $500 for both Mr. Ferraro and Ms. Vega. In addition to the declarations of counsel, the Court relies on its own knowledge and experience of customary rates concerning reasonable and proper fees, *see Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and considers the relevant *Kerr* factors. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (finding that district courts may consider the *Kerr* factors in determining an appropriate market rate). Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour. *See, e.g.*, *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *21 (S.D. Cal. Feb. 5, 2021) (finding $1150-$1050 to be reasonable rates for partners with more than 30 years of experience from a Top 100 law firm); *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26–27 (S.D. Cal. Jan. 13, 2021) (finding rates of $650 per hour for attorneys with more than 30 years of experience to be reasonable); *Sunbelt Rentals, Inc. v. Dubiel*, No. 20-cv-876-WQH-BGS, 2020 WL 6287462, at *2 (S.D. Cal. Oct. 27, 2020) (finding $405 rate per hour to be a reasonable rate for a partner in a breach of contract action); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-cv-2877-AJB-MSB, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding $550 rate per hour to be a reasonable rate for a partner in an employment action); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725 for attorneys with approximately 30 years of experience and rate of $550 for attorney with 12 years of experience); *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019 WL 1599188, at *13–14 (S.D. Cal. Apr. 15, 2019) (finding reasonable the hourly rates of $760 for partners from a Top 100 law firm with 28-29 years of experience), *attorney fees aff'd* by 807 F. App'x 674 (9th Cir. Apr. 20, 2020); *Kikkert v. Berryhill*, No. 14cv1725-

MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal. July 30, 2018) (an unopposed fee motion after a successful social security appeal, finding de facto hourly rate of $943 reasonable, citing other decisions in the district approving rates from $656 to $886). Therefore, the Court finds that Class Counsel's $500 rate is reasonable.

The Court next considers whether Class Counsel's expenditure of 390 hours on this case is reasonable. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 433, 437). A district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry*, 751 F.3d at 1111 (citing *Moreno*, 534 F.3d at 1112). However, the Court "should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary." *Id.*

Class Counsel has provided detailed billing records, which indicate that the hours of work performed on this case were generally reasonable, necessary, and thus compensable. *See* Doc. No. 31. Moreover, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008). Accordingly, "the lodestar can be approximate and still serve its purpose." *Id.*

Accordingly, finding the hourly rates identified above and hours expended to be reasonable, the Court agrees with Class Counsel's calculation of the lodestar figure in this case of $195,000. *See* Doc. No. 27-1 at 15.

b.  Lodestar Crosscheck

This Court has previously acknowledged that "California courts routinely award attorneys' fees of one-third of the common fund." *Espinosa v. Cal. Coll. of San Diego,*

*Inc.*, No. 17cv744-MMA (BLM), 2018 U.S. Dist. LEXIS 60106, at *24 (S.D. Cal. Apr. 9, 2018) (quoting *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017)) (collecting cases). But "[r]egardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is *reasonable*." *Espinosa*, 2018 U.S. Dist. LEXIS 60106, at *27-28 (emphasis added) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050.

"[A]n appropriate positive or negative multiplier reflect[s] . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029). Likewise, a "percentage amount can . . . be adjusted upward or downward to account for any unusual circumstances involved in this case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The lodestar crosscheck supports the requested fee award in this case. The requested award of $465,000—30% of the Gross Settlement Amount—represents a performance multiplier of approximately 2.4 over the lodestar figure. The Court finds that this is reasonable.

Accordingly, the Court **GRANTS** Plaintiff's motion for an attorney's fee award of $465,000.

**B.    Costs**

Plaintiff requests reimbursement for $6,421.50 in actual litigation costs expended by Class Counsel.

### 1.    *Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified

class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)); *see also Staton*, 327 F.3d at 974.

      2.   *Discussion*

      Plaintiff seeks an award of costs totaling $6,421.50 expended by Class Counsel for filing fees, service fees, photocopying costs, postage, and other litigation related expenses.  *See* Doc. No. 27-3 at 12.  The Court finds that upon review, the requested award is reasonable in light of the itemized costs.  Costs for service of process are taxable under 28 U.S.C. § 1920 as well as Civil Local Rule 54.1.b.1, which provides that "(c)osts for service of subpoenas are taxable as well as service of summonses and complaints." Filing fees are recoverable under 28 U.S.C. §1920(1).  Additionally, the Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs."  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  Other recoverable expenses include expenses related to discovery and expenses related to computerized research.  *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (noting that "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable because the evidence was necessary to negotiate a settlement).

      Accordingly, because Class Counsel's out-of-pocket costs were reasonably incurred in litigating this action and were advanced by counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation costs in the full amount

requested. *See, e.g.*, *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016).

### CLASS REPRESENTATIVE SERVICE AWARD

Finally, Plaintiff requests an incentive award of $10,000 for her service as the Class Representative in this action.

**A.   Legal Standard**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "Such awards are discretionary." *Rodriguez v. W. Publ'g Corp.* (*Rodriguez I*), 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has instructed district courts to "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *See Radcliffe*, 715 F.3d at 1163. Incentive awards that are disproportionate to the class's recovery risk a conflict of interest between a class representative's interests and the class's interests. *See id.* (quoting *Rodriguez I*, 563 F.3d at 959). This is especially relevant where retainer agreements require class counsel to request an incentive award or where the settlement agreement conditions the award on the class representatives' approval of the settlement. *See id.* at 1163–64. "Where . . . the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate." *Id.* at 1165. Additionally, in evaluating the reasonableness of incentive awards,

> [t]he district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."

*Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

1    Further, "class members can certainly be repaid from any cost allotment for their

2    substantiated litigation expenses." *Id.*  Taken together, courts examine the following

3    factors when scrutinizing incentive awards on an individual basis in class action

4    settlements: (1) conflicts of interest between the class representative and the class in

5    assessing the terms or disparity of an award, (2) actions taken by the class representative

6    to protect the class's interest, (3) the benefit received by the class based on the class

7    representative's actions, (4) the time and effort expended by the class representative, and

8    (5) the class representative's reasonable fears of workplace retaliation.

9    **B.    Discussion**

10    Pursuant to the Settlement Agreement

11

12    Class Representative Service Payment: The amount the Court awards to
      Plaintiff Sarah Blount for her service as a Class Representative, which will
13    not exceed $10,000. The payment shall be paid from the Qualified Settlement
      Fund and will not be opposed by Defendant. This Service Payment is subject
14    to approval of the Court. If the Court awards less than the amount requested,
      any amount not awarded will become part of the Net Settlement Amount for
15    distribution to Participating Class Members.

16

17

18    Doc. No. 420-2 at 22.  The $10,000 incentive award as requested by Plaintiff in this case

19    is at the high end of the range of such awards in this Circuit.  However, after reviewing

20    the declarations of both Class Counsel and Plaintiff, the Court agrees that a substantial

21    incentive award is appropriate here in light of the time and effort Plaintiff expended on

22    this litigation, the benefit obtained for the class, and the risks associated with bringing a

23    class action lawsuit against a former employer.

24    Accordingly, the Court **APPROVES** Plaintiff's request for a $10,000 incentive

25    award.

26

27

28

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for final approval of the class settlement and **GRANTS** Plaintiff's motion for attorney's fees, costs, and an incentive award.

The Court **CERTIFIES** the Settlement Class for the purposes of the Settlement. The Court **APPROVES** the Settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). The Court **ORDERS** the parties to undertake the obligations set forth in the Settlement Agreement that arise out of this Order.

The Court **AWARDS** attorneys' fees to Class Counsel in the amount of **$465,000** and costs in the amount of **$6,421.50.**

The Court further **AWARDS** to Plaintiff an incentive payment for work performed as the class representative in the amount of **$10,000**.

The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal in accordance herewith, *see* Fed. R. Civ. P. 58(a), and to close the case.

Without affecting the finality of this Order, the Court maintains jurisdiction over this matter for purpose of enforcing the Judgment.

**IT IS SO ORDERED**.

Dated:  April 12, 2022

HON. MICHAEL M. ANELLO
United States District Judge